CARL G. McCRAW, SR. v. FIRST UNION NATIONAL BANCORP, INC., AND FIRST UNION NATIONAL BANK OF NORTH CAROLINA

No. 7326SC291

(Filed 25 July 1973)

1. **Master and Servant § 9— compensation upon early retirement — deduction of payments made under group disability plan**

    Payments to plaintiff under defendant bank's group disability plan were "amounts received" by plaintiff from the "insurer of the Bank's salary continuation plan" and "other payments direct or indirect . . . and other fringe benefits" which could properly be deducted from the $70,000 per year the bank agreed to pay plaintiff from the date of his early retirement until his 65th birthday.

2. **Master and Servant § 1— early retirement — employer's contributions to profit sharing plan**

    Where plaintiff was granted an early retirement as chairman of the board and chief executive officer of defendant bank, the bank properly stopped making contributions for plaintiff to its profit sharing plan as of the date of his early retirement since (1) the terms of retirement provided that plaintiff's participation in the bank's contribution would be based on plaintiff's compensation through the date of his early retirement and (2) after his early retirement plaintiff was no longer an employee of defendant bank within the meaning of the bank's profit sharing plan.

3. **Master and Servant § 1— early retirement — stock option plan — employee**

    Plaintiff was no longer an "employee" of defendant bank within the meaning of the bank's stock option plan after the bank imposed early retirement on plaintiff as of 31 July 1966, although the bank agreed to pay plaintiff certain compensation until his 65th birthday, and plaintiff was required by the terms of the stock option plan to exercise his option within three months after his retirement.

APPEAL by plaintiff from *Froneberger, Emergency Judge,* 25 September 1972 Session of Superior Court held in MECKLENBURG County.

On 25 July 1966 plaintiff was Chairman of the Board and Chief Executive Officer of what was then First Union National Bank of North Carolina (Bank). Although there have since been changes in the corporate entity of the Bank, it and its successor in interest, First Union National Bancorp, Inc., will be referred to as "defendant." On that date the Executive Committee of defendant recommended to its Board of Directors that plaintiff be granted early retirement and that he be granted specific financial benefits. The next day, the board met and voted to adopt the report of the Exceutive Committee. Plaintiff, a member of the Executive Committee and the board, voted against the measures at both meetings. On 23 August 1966 the Executive Committee wrote plaintiff as follows:

"Dear Mr. McCraw:

[1] To implement the resolutions concerning your retirement which were adopted by the Board of Directors on July 26, 1966, there is set forth below a detailed interpretation of said resolutions which has been approved by the Executive Committee,

[2] You are to accept early retirement effective August 31, 1966, and are relieved of all duties and responsibilities other than those hereinafter set forth as of July 26, 1966.

[3] Effective July 26, 1966, you have relinquished the title of Chairman of the Board and Chief Executive Officer, membership on all Bank committees, and the position of trustee, officer, and director of all Bank related companies.

[4] The Bank is to pay you in monthly installments the sum of Seventy Thousand Dollars ($70,000.00) per annum, payments to commence September 30, 1966, and to continue thereafter each month through August 31, 1970; or until the last day of the month in which occurs the date of your death, should such date be prior to August 31, 1970. This payment of Seventy Thousand Dollars ($70,000.00) per annum by the Bank shall be reduced by amounts, if any, received by you from the insurer of the Bank's salary continuation plan and by all other payments direct or indirect in relation to expenses and other fringe benefits payable to or for you except payments in connection with your continued participation in the Profit Sharing Plan,

premiums on group life insurance, the acquisition costs of certain automobiles and payments of certain expenses in connection with a house in Blowing Rock, North Carolina, all of which is more fully set forth hereinafter.

[5] For the above period ending on August 31, 1970, you agree to be on call to give advice and counsel to the Bank and to cooperate with management of Bank and its policies.

[6] On or before July 31, 1970, you shall have the right to elect retirement benefits in the form of a single life annuity or in the form of a joint and survivor annuity for the lives of yourself and your wife. Commencing August 1, 1970, Bank will supplement payments from the Bank's Pension Fund to the extent necessary to provide retirement benefits equal to those which would have been obtainable by you from Bank's Pension Plan, under the provisions now in effect, under the option elected by you, had you remained in the active employment of the Bank at an annual salary of Seventy Thousand Dollars ($70,000.00) through August 31, 1970.

[7] You shall participate in the Bank's contribution for 1966 based on your compensation through August 31, 1966, as provided for in the Bank's Profit Sharing Plan; and thereafter your participation and/or non-participation in future contributions, forfeitures and net adjustments (net income, realized profits and losses, and unrealized profits and losses in the investments in the fund) shall be governed according to the terms of the Profit Sharing Plan. On August 31, 1970, you may elect to receive your benefits under any option permitted by the Plan.

[8] Bank will continue to keep in effect existing life insurance on your life under the Bank's Group Life Insurance Plan, presently with Pilot Life Insurance Company, through August 31, 1970. Thereafter Bank will keep in effect and pay the premiums on only so much of said life insurance as the Bank's present insurance plan provides in the case of a retired employee.

[9] Your wife is to receive in monthly installments the sum of Ten Thousand Dollars ($10,000.00) per year. Payments are to commence with the first day of the month following the month in which your death occurs or on

January 1, of the following year at the option of Mrs. Mc-Craw and continuing for a period of ten (10) years or the date of her death, should she die prior to the expiration of such ten (10) year period.

[10] Bank will transfer title to the 1965 Cadillac now being used by you into your name. On May 1, 1967, Bank will purchase a comparable car to be titled in your name and shall make a similar purchase on May 1, 1969. In the case of both purchases, the older car shall be used as a trade-in on the next car being purchased, and the transactions shall be handled by the Bank. All expenses in connection with the said cars, other than their net acquisition cost, shall be paid by you. You are to furnish Bank with a certificate of comprehensive insurance on said cars including One Hundred Dollars ($100.00) deductible collision coverage with a loss payable clause providing for payments to be made jointly to Bank and you. Any car so furnished to you shall be reassigned by you to the Bank on August 31, 1970, at which time you shall have no further right to or interest in said car. Should you die prior to August 31, 1970, your estate shall forthwith assign such car then in your name to the Bank, and no other person or entity other than Bank shall have any right to or interest in such car.

[11] You are to be permitted to continue the use of the furnished house in Blowing Rock, North Carolina, through August 31, 1970, or until the date of your death whichever occurs first. Bank is to pay ad valorem property taxes and fire and casualty insurance premiums and is to make all major repairs and replacements. You are to pay all other costs including cost of maintenance, decorating, utilities, lawn care, and shall make minor repairs. You are to be liable for all damage not insurable and not insured by the Bank, reasonable wear and tear excepted.

[12] You will at no time act as an officer, employee, or member of a board of directors for any other commercial bank in the state of North Carolina, or engage in any other activity that might in any way compete with the Bank or with any of its related business ventures.

[13] The benefits payable to you under the terms of this interpretation are all of the benefits and privileges you will receive from the Bank or any of its officers and

directors and does hereby relieve each of its officers and directors from all claims and demands of any kind known or unknown with the exception only of the rights accruing to you hereunder.

[14] You will use your best efforts to safeguard the business or trade secrets of the Bank and will not reveal the existence of any relation with any other business venture or the nature of such relationship.

[15] You will cooperate with Bank and endeavor to promote the best interests of Bank; and to that end, you will refrain from any criticism of the Bank, its present, future, or former officers or directors. You will not do or say anything that would in any way interfere with the growth of the Bank or prevent it from acquiring or maintaining any business, or to in any way discourage any possible merger, consolidation or any type of acquisition, with any other bank or banks. You will not do or say anything that might tend to reflect unfavorably on the Bank or on any of its personnel.

[16] Any breach by you of any part of the above conditions shall cause an immediate termination of this arrangement and you shall have no further rights to any benefits payable hereunder. The Executive Committee of the Bank shall have complete and sole authority to determine whether the above conditions have been breached, and its decision will be final and binding. Nothing herein contained shall be construed in any way to jeopardize the benefits to which you are now entitled under the Bank's Pension Plan, Profit Sharing Plan, and Group Insurance Plans."

This Court has numbered the paragraphs of the letter for convenience in reference.

On 31 March 1971, plaintiff instituted this action seeking a recovery which we summarize as follows:

*First Claim.* (1) The amount paid plaintiff by the carrier of defendant's group disability insurance plan, which sum defendant had deducted from the $70,000 per year paid plaintiff by the defendant from 30 September 1966 through 31 August 1970.

(2) Defendant stopped making contributions to its profit sharing plan for plaintiff on 31 August 1966. Plaintiff

seeks judgment for the difference between the amount received from the profit sharing plan and what he would have received if he had been employed at an annual salary of $70,000 per year until 19 August 1970 when he reached his 65th birthday.

(3) A declaratory judgment that defendant is required to pay him full pension benefits and, beginning at his death, pay his widow $10,000 for ten years or for such time for such part of ten years that his widow lives after plaintiff's death.

*Second Claim.* Plaintiff claims that on 15 December 1969 defendant denied him the right to purchase corporate stock under a stock option plan created by the defendant in 1963. He seeks recovery for: (a) the amount of dividends, and interest thereon, on the stock he could have purchased under that plan; (b) the difference between the option price of $25.00 per share for 5,000 shares and the highest market value of those shares; and (c) the difference between the taxes that will be payable by him upon receipt of item (b) and the taxes that would have been payable had he been able to exercise his options instead of receiving a money judgment.

At the close of plaintiff's evidence the court granted defendant's motion for a directed verdict and rendered judgment on the merits in favor of defendant.

*Fleming, Robinson & Bradshaw, P. A., by Russell M. Robinson II for plaintiff appellant.*

*Warren C. Stack for defendant appellees.*

VAUGHN, Judge.

We have not set out the minutes of and resolutions adopted in the meetings of the Executive Committee on 25 July 1966 or the board meeting held the following day for we are of the opinion, and so hold, that plaintiff's rights are limited to those set out in the letter to him dated 23 August 1966. We will refer to a portion of the minutes to explain plaintiff's claim. The minutes specify that plaintiff be granted early retirement and "receive total compensation from *bank sources* in the sum of $70,000 per annum until the date of his 65th birthday." [Emphasis added.] The letter to plaintiff dated 23 August 1966 provides

that the $70,000 shall be reduced by amounts "received by you from the insurer of the Bank's salary continuation plan and by all other payments direct or indirect in relation to expenses and other fringe benefits payable to or for you except payments in connection with your continued participation in the Profit Sharing Plan, premiums on group life insurance, the acquisition costs of certain automobiles and payments of certain expenses in connection with a house in Blowing Rock, North Carolina, all of which is more fully set forth hereinafter."

[1] Payment to plaintiff under defendant's group disability insurance plan are "amounts received" by plaintiff from the "insurer of the Bank's salary continuation plan" and "other payments direct or indirect . . . and other fringe benefits." Plaintiff's evidence is that defendant has paid plaintiff $70,000 each year, less the sum received under that plan. Plaintiff, therefore, has shown no right to recover under part (1) of his first claim.

[2] Part (2) of plaintiff's first claim concerns the fact that defendant stopped making contributions to the profit sharing plan after 31 August 1966. We hold that this action was authorized by the express terms of paragraph 7 of the defendant's letter to plaintiff which provides that plaintiff's participation in the bank's contributions would be based on plaintiff's compensation through 31 August 1966. Furthermore, plaintiff's evidence discloses that, after 31 August 1966, he was not an employee of defendant within the meaning of defendant's profit sharing plan. The plan defines the term employee to mean "any person regularly employed by the bank whose customary employ (sic) is for thirty hours or more a week and who receives a regular stated salary from the bank other than a pension, wage, severance pay, retainer or fee under contract." After 31 August 1966 defendant credited plaintiff's profit sharing account with all earnings and other sums to which he claims he is entitled except for making additional contributions based on his alleged "earnings" as an "employee" after 31 August 1966. Each year plaintiff received a letter showing the balance in his account and, at his request, the entire sum was paid to him in April of 1971. Plaintiff's evidence, therefore, fails to show that he is entitled to recover under part (2) of his first claim.

As to part (3) of the first claim, plaintiff admits that the evidence falls short of his allegations and we hold that he has shown no present right to relief under that part of his claim.

McCraw v. Bancorp, Inc.

[3]  Plaintiff's second claim concerns his right to exercise an option to buy a total of 5,000 shares of stock under a stock option agreement given him in 1963. The plan provides, in part: ". . . that if any termination of employment is due to retirement with the consent of the Bank, the optionee shall have the right . . . to exercise his option, at any time within three months after such retirement. . . ." Plaintiff testified that he did not exercise his option within three months after 31 August 1966. He attempted to exercise the option so as to buy 1,000 shares on 11 December 1969. Plaintiff argues that he did not retire until 31 August 1970 and thus, until that time he was still an "employee" within the meaning of the plan. This argument is refuted by the plain language in paragraph 2 of defendant's letter: "You are to accept early retirement effective 31 August 1966. . . ." Plaintiff's evidence also tends to show that the terms "employee" and "employment" as used in defendant's stock option plan are intended to have the meaning given them in Treasury Regulations defining restricted stock option plans if such plans are to qualify for the favorable tax consequences applicable to transfers of stock as provided therein. Plaintiff, after 31 August 1966, was not an employee within the meaning of the Internal Revenue Code and Treasury Regulations dealing with restricted stock options. See 26 U.S.C.A. (I.R.C. 1954) §§ 424(a)(2)(A), 424(a)(2)(B), 3401(c) ; Treas. Reg. §§ 1.421-3(a)(2) (1961), 1.424(a)(11)(b) (1964), 31-3401(c)-1. Plaintiff failed to exercise his option within three months of his retirement on 31 August 1966. He has, therefore, shown no right to recover on his second claim.

We have held that plaintiff's rights in this case are limited to those set out in defendant's letter of 23 August 1966, including the profit sharing and stock option plans to which the letter refers; that the meaning of those documents raises questions of law and not of fact; and that plaintiff's evidence shows that defendant has complied with its obligations, as we understand and interpret them to be. Having placed the case in this posture we are of the opinion that it is unnecessary to discuss questions relating to admission and exclusion of evidence, statutes of limitation, accord and satisfaction, election of remedies and other matters raised in the briefs.

Affirmed.

Judges BRITT and MORRIS concur.